R.B. and Dora Donavan filed suit against Orkin Exterminating Company on September 15, 1983, for damage resulting from an alleged breach of contract for protection of their home against subterranean termites. The complaint against Orkin sought relief on several grounds, of which only the claims of negligent performance of contractual duties, and breach of contract, were submitted to the jury. The jury returned a verdict against Orkin in the amount of $60,000. Its motion for new trial, JNOV, and remittur were denied and this appeal ensued.
R.B. Donavan, who died during the pendency of this action, built the house that is the subject of this suit, in 1951. In 1978 the Donavans entered into a subterranean termite agreement with Orkin that included a "lifetime repair guarantee." That guarantee provided as follows:
 "ORKIN guarantees that during the period this Guarantee is in force, it will, AT NO EXTRA COST, re-treat and repair the structure and contents to remedy any new damage caused by Subterranean Termites, provided it is established that such new damage was caused by Subterranean Termites after the date of initial treatment, and that at the time of discovery of the new damage, the damaged areas are infested with live Subterranean Termites. ORKIN will be responsible for such repairs only when made with ORKIN's approval and under ORKIN's supervision and control. You understand that ORKIN's liability for such repairs is limited to structural and contents damage and shall in no event exceed $100,000.00 aggregate loss."
The contract provided for an initial treatment fee of $425 with a $50 annual renewal fee. The Donavans paid these sums and were satisfied with Orkin's services until early 1983.
In January or February of 1983, Mrs. Donavan discovered that termites had apparently eaten some papers that she had stored in her bedroom closet. Upon further inspection, she found what she suspected was termite damage on the wall next to her refrigerator and in the adjacent ceiling. An Orkin representative inspected these areas and assured her that it was just water damage.
On May 14, 1983, Mrs. Donavan found that termites had swarmed in her home. The insects were so dense in the kitchen that they covered the entire stove. Mrs. Donavan again called Orkin, and John Cunningham, the Mobile branch manager, came out to inspect her home in Citronelle. Cunningham acknowledged the presence of live termites and identified several areas of termite damage. He advised the Donavans to hire a contractor in order to get an estimate on the amount of the damage. He also warned the Donavans not to explore for hidden termite damage that he had not yet detected. It was his contention from the outset of discovery of termite damage that he or his agent was required to be present to inspect for live termites during each and every repair to ascertain that the damage was not a preexisting condition. This condition, which is nowhere expressed within the four corners of the written guarantee, was frustrated by Cunningham's pattern of failing to attend to this obligation.
The Donavans hired Johnny Tucker to prepare an estimate of the damage and to conduct the necessary repairs. His initial estimate was in the neighborhood of $500 but it quickly escalated, and the final total was $15,618.56. It is undisputed that termites were found in every room of the house except for the two bathrooms. Repair of the termite damage necessitated removal of over half of the interior walls. *Page 1332 
It appears from the record that as each repair was made more damage was uncovered. Repairing the damage took over three months and necessitated that the Donovans move out of the house in the interim. After Orkin refused to honor its obligation, the Donavans paid $10,057.02 for materials and labor out of their own funds and Mr. Donavan was forced to do much of the work himself.
On May 28, 1983, while much of the termite damage was still being uncovered, Orkin sent an exterminator out to re-treat the Donavans' home. The Donavans refused entry to the Orkin man, and the house went without re-treatment until June 2. The Donovans claim they wanted to ascertain the extent of the damage before Orkin destroyed the evidence of infestation of live termites. On June 2, 1983, the Donavans had their home inspected by Hilliard Brackin from the State Department of Agriculture and Industries. He conducted a structural pest inspection of the Donavans' house to ascertain the presence of live termites in the house and to assess the extent of damage.
Brackin, who testified on behalf of the Donavans in an expert capacity, said that his initial inspection on June 2 revealed that the house had not been properly treated for termites. He found that the holes drilled in the slab, which are made in order for the termite treatment to affect the soil under the house, were not deep enough to penetrate the slab. In essence, Orkin drilled holes sufficient to penetrate into the foundation but not through it. Brackin also found areas in the foundation where no holes had been drilled and there had presumedly been no attempt to treat for termite protection. He also found a patio and a porch that abutted the main slab that were, likewise, improperly treated by Orkin.
After Brackin completed his June 2 inspection, he gave Orkin instructions regarding the proper method of re-treatment for the Donavans' home. Brackin inspected the Donavans' home again on June 13 and found that the Orkin re-treatment applied on June 2 was, likewise, ineffective. His inspection revealed that Orkin had again drilled insufficient holes for treatment of the house's foundation. He also ascertained the continued presence of live termites during this inspection.
On June 22 Brackin inspected the Donavans' home for the third time, only to find that Orkin's application of termite treatment was incomplete and improperly applied. On July 11 Brackin made his final inspection of the Donavan home. This time he found that Orkin had properly drilled and treated the house and its foundation.
The Donavans also claimed Orkin damaged their house in the course of its inspection and treatment for termites. Specifically, Mrs. Donavan claims that Orkin broke the tile in her kitchen rather than lifting it in the proper manner; that Orkin did not reattach the carpet in the living room that it had removed for inspection and treatment of the foundation; that the carpet was subsequently damaged and could not be reused; and that the holes that Orkin drilled through the slab were never refilled, subjecting her to the noxious vapors from the chemical treatment. In short, her complaint is that the re-treatment was not conducted with good workmanship in accord with the contract. She also complains that Cunningham, the Mobile office manager; Frank Hackett, the Orkin director in Atlanta; and the exterminators from the Mobile office were uncooperative and unprofessional in dealing with the matter. She claims that the manner in which Orkin handled this affair caused her mental anguish and unnecessary aggravation under the circumstances. She submitted evidence to the jury that the Orkin agents involved were abusive to her and acted with indifference to her claim. Her testimony, which was supported by corroborating evidence, was that the Orkin representatives habitually promised to meet her at the house to approve of or supervise the repairs and then failed to keep the appointments. Mrs. Donavan said that this caused her unnecessary inconvenience and hardship and needlessly delayed the repairs.
Orkin's initial argument on appeal is that the jury verdict is clearly and palpably *Page 1333 
wrong because it is against the weight of the evidence. As this Court said in Goodson v. Elba Baking Co., 408 So.2d 498,499-500 (Ala. 1981):
 "It is the function of the jury to resolve controverted issues of fact. Fleming v. Kirkpatrick, 371 So.2d 16 (Ala. 1979). The verdict of a jury is presumed to be correct, and will not be set aside unless it is against the preponderance of the evidence, or, viewed in the light most favorable to the non-moving party, is clearly wrong and unjust. Trans-South-Rent-A-Car, Inc. v. Wein, 378 So.2d 725 (Ala. 1979)."
See also Osborne v. Cobb, 410 So.2d 396, (Ala. 1982), and S.S.Kresge Co. v. Ruby, 348 So.2d 484 (Ala. 1977). The trial judge's denial of a motion for new trial strengthens the presumption of correctness of the verdict. Osborne, supra,Chavers v. National Security Fire Casualty Co., 405 So.2d 1
(Ala. 1981).
In the present case, the evidence is undisputed that the termite treatment of the Donavans' home was improperly applied and, therefore, ineffective. Every room in the house, except the two bathrooms, was infested with termites. The damage to the house was so pervasive that repair necessitated replacement of over half of the interior walls. The evidence also tended to show that Orkin's agents were indifferent to the Donavans' plight and needlessly dilatory in handling their claim. Under these circumstances, there is ample evidence that Orkin breached its contract with the Donavans.
Orkin also contends that it was error for the trial court to charge the jury that Mrs. Donavan was entitled to recover damages for mental anguish that she suffered as a result of the incident. The trial court charged the jury that Mrs. Donavan could recover damages for mental anguish if the jury was satisfied "that the contractual duties imposed by this contract are so coupled with matters of mental solicitude as to the duty that is owed, that a breach of that duty will necessarily or reasonably result in mental anguish. . . ." This instruction was given in light of this Court's opinion in B M Homes, Inc. v. Hogan, 376 So.2d 667 (Ala. 1979).
B M Homes was a case brought by a home buyer against the builder. In that case this Court approved the following statement from an opinion of the Court of Civil Appeals: "[W]here it is demonstrated that the breach of the contractual duty actually caused the complaining party mental anguish or suffering and that the breach was such that it would necessarily result in emotional or mental detriment to the plaintiff, damages for annoyance and inconvenience may be awarded," 376 So.2d at 672, quoting Hill v. Sereneck,355 So.2d 1129, 1132 (Ala.Civ.App. 1978).
The recovery of damages for mental anguish in a contract action was first explained in F. Becker Asphaltum Roofing Co.v. Murphy, 224 Ala. 655, 141 So. 630 (1932), a case analogous to the present action. In that case a roofer was sued for damage caused by defective materials and faulty workmanship used in roofing the plaintiff's house. The Court cited similar language, with approval, and explained that contracting for construction of a new roof in order to protect the plaintiff's worldly possessions and well-being was inextricably bound up with her mental concern and solicitude. In such a case she was entitled to recover for inconvenience and annoyance proximately caused by the breach. See Lawler Mobile Homes, Inc. v. Tarver,492 So.2d 297 (Ala. 1986), Alabama Power Co. v. Harmon,483 So.2d 386 (Ala. 1986).
Similarly, we find the present case appropriate for awarding damages to compensate for mental anguish. As this Court said in F. Becker Asphaltum Roofing Co., Mrs. Donavan's home is her castle, her protection from the elements, and her shelter for her belongings. The breach of a contract for termite protection, which affects the habitability of a house, can reasonably be foreseen to affect the solicitude and well-being of the occupants. A breach of a contract that necessarily impinges on this solicitude and well-being is the proper subject for an award of damages for mental anguish. *Page 1334 
The Donavans contracted with Orkin for protection for their home from termite damage. Because Orkin did not fulfill its obligation to provide that protection, the Donavans' house was riddled with termite damage, rendering it uninhabitable for a time. To compound matters, Orkin's agents were uncooperative in settling the affair. It admitted during the course of repairs that it was liable for the damage to the house, but refused to honor that obligation. This necessitated that the Donavans pay much of the repair expenses from their own funds and required them to perform some of the work themselves. Under the circumstances of this breach, it was quite foreseeable that the Donavans' well-being would be affected and that they would suffer mental anguish.
For these reasons, the jury award of $60,000 was not unreasonable or otherwise improper. The judgment of the trial court is due to be, and is hereby, affirmed.
AFFIRMED.
MADDOX, JONES, BEATTY and HOUSTON, JJ., concur.