Eladio RUIZ de MOLINA, Plaintiff-Appellant,

v.

MERRITT & FURMAN INSURANCE AGENCY, INC., a corporation;  Skip Smith, Defendants-Appellees,

Worldwide Marine Underwriters, a corporation;  Bob Luellen, an individual, Defendants-Cross Defendants-Appellees.

Eladio Ruiz de Molina, Plaintiff,

v.

Merritt & Furman Insurance Agency, Inc., a corporation;  Skip Smith, an individual, Defendants-Cross-Claimants-Appellants,

Worldwide Marine Underwriters, a corporation;  Bob Luellen, an individual, Defendants-Cross-Defendants-Appellees.

Nos. 98-6958, 98-6975.

United States Court of Appeals,

Eleventh Circuit.

March 30, 2000.

Appeals from the United States District Court for the Northern District of Alabama. (No. 96-03166-CV-N-S), Edwin L. Nelson, Judge.

Before ANDERSON, Chief Judge, WILSON, Circuit Judge, and HILL, Senior Circuit Judge.

HILL, Senior Circuit Judge:

Plaintiff sued defendants for damages incurred when his boat was damaged and defendants denied insurance coverage.  Two defendants moved to dismiss for lack of personal jurisdiction.  The district court construed the motion as one for summary judgment and granted it.  After trial, plaintiff won a judgment against the remaining defendants and was awarded damages including $90,000 for mental anguish.  Upon motion, the district court struck the mental anguish damages.  Plaintiff appeals both judgments.

I.

Eladio Ruiz de Molina purchased a sloop named Ariel in June of 1994.[1] The boat was moored in Alabama at the time and was part of a fleet of charter boats. In August or September of 1995, Ruiz de Molina telephoned Frank Smith, an insurance broker, at his office in Pompano Beach, Florida to inquire about insurance for the boat were it moored in Mexico. Smith contacted Robert Luellen, an insurance broker who worked for Worldwide Underwriters Marine, Inc. (Worldwide Marine) in Michigan, and obtained a verbal quote, followed by a fax, for insurance for the boat if moored in Mexico. Smith transmitted the quote to Ruiz de Molina in Alabama. Sometime later, Ruiz de Molina decided to moor the boat in Ft. Myers, Florida instead of Mexico. In early December 1995, he again contacted Smith and requested that insurance be bound on the boat with a mooring in Florida. He asked Smith to provide him with a written binder setting forth the coverage obtained. Smith contacted Luellen to obtain a new quote for the premium and, on December 6, sent a fax to Luellen in Michigan requesting that coverage be bound. According to Smith, he had several phone conversations that day with Luellen in Michigan concerning the placement of this coverage and Luellen informed him that a binder could be issued to Ruiz de Molina. Following these conversations, Smith faxed a binder to Ruiz de Molina in Alabama. The binder indicated that the coverage would be effective that day, December 6, 1995.

On December 8, 1995, Ruiz de Molina set sail from Alabama destined for Ft. Myers, Florida. On or about December 9, 1995, the boat was damaged at sea. On December 11, 1995, Ruiz de Molina telephoned Smith in Pompano Beach, Florida, and reported the loss. Smith faxed a notice of the claim to Luellen in Michigan. Later that day, Luellen and Smith discussed the claim by telephone. After these discussions, Luellen telephoned an insurance broker in Georgia and obtained coverage for the boat as of December 12, 1995, with an effective date of December 6, 1995, provided no known or reported losses had occurred. Sometime in January 1996, an employee of Worldwide Marine telephoned Ruiz de Molina and told him that

---

[1]Although the district court treated the motion to dismiss as one for summary judgment, Fed.R.Civ.P. 12(b), we still assume the allegations of ultimate fact to be true for the purposes of resolving the motion. *See Cox v. Administrator U.S. Steel & Carnegie,* 17 F.3d 1386, 1400 (11th Cir.1994).

he would "help the plaintiff get his boat repaired" and that he was helping Smith. Subsequently, however, Luellen told Ruiz de Molina that he had no effective coverage through Worldwide Marine at the time of the damage to the boat.

Ruiz de Molina filed this action against Luellen and Worldwide Marine, alleging that they had misled him into believing that his coverage was bound as of December 6, 1995. He claimed that defendants had negligently, wantonly, willfully or recklessly caused him to be denied benefits under the policy of insurance. He also claimed that defendants had defrauded him concerning his coverage and that they had acted in bad faith.

He also named Frank Smith and the Merritt & Furman Insurance Agency, Inc. (Merritt & Furman) as defendants. He alleged that these defendants had breached their contract to procure insurance for him and that they were also guilty of negligence and innocent misrepresentation with respect to the effective date of the coverage.

Luellen and Worldwide Marine moved to dismiss the complaint on the grounds that the district court lacked personal jurisdiction over them because they had insufficient contact with Alabama. The district court converted the motion into one for summary judgment, *see* Fed.R.Civ.P. 12(b); *Fikes v. City of Daphne,* 79 F.3d 1079, 1083 (11th Cir.1996), and granted it. The first issue on appeal is whether the district court erred in so doing. We review the grant of summary judgment de novo. *Alexander Proudfoot Co. World Headquarters v. Thayer,* 877 F.2d 912, 916 (11th Cir.1989).[2]

The case proceeded to trial against the remaining defendants—Smith and his agency, Merritt & Furman. The jury found Merritt & Furman liable for breach of contract and both Smith and Merritt & Furman liable for negligence and innocent misrepresentation. The jury awarded damages, including $90,000 for mental anguish. The second issue on appeal is whether the jury's verdict can support the award for mental

---

[2]Merritt & Furman also cross-claimed against Luellen and Worldwide Marine and appeals their dismissal as well.

anguish. We review this issue of law de novo. *Hibiscus Assocs. Ltd. v. Bd. of Trustees of Policemen and Firemen Retirement Sys.,* 50 F.3d 908, 920 (11th Cir.1995).

II.

A.      *Personal Jurisdiction*

A federal court sitting in diversity may exercise jurisdiction over a nonresident defendant to the same extent as a court of that state. *Prejean v. Sonatrach, Inc.,* 652 F.2d 1260 (5th Cir. Unit A 1981). Alabama permits its courts to exercise jurisdiction over nonresidents to the fullest extent allowed under the Due Process Clause of the Fourteenth Amendment to the Constitution. Ala. R. Civ. P. 4.2(a)(2)(I); *Martin v. Robbins,* 628 So.2d 614, 617 (Ala.1993); *Horn v. Effort Shipping Co., Ltd.,* 777 F.Supp. 927, 929 (S.D.Ala.1991). The Due Process Clause permits a court to summon a nonresident to defend himself in the forum so long as that person has some "minimum contacts" with that state and, the exercise of personal jurisdiction over the defendant would not offend "traditional notions of fair play and substantial justice." *International Shoe Co. v. Washington,* 326 U.S. 310, 316, 66 S.Ct. 154, 90 L.Ed. 95 (1945); *Williams Elec. Co. v. Honeywell, Inc.,* 854 F.2d 389, 392 (11th Cir.1988).

The nonresident defendant's contacts with the forum must be such that he has "fair warning" that a particular activity may subject him to the jurisdiction of a foreign sovereign. *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 472, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985). A person has fair warning if he "purposefully directs" his activities at the forum, and claims of injury result from these activities. *Id.* The exercise of jurisdiction over him does not "offend traditional notions of fair play and substantial justice" because his conduct and connection with the forum are such that he should reasonably anticipated being haled into court there. *Id.* The Supreme Court has made very clear that:

> [i]t is essential in each case that there be some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws.

4

*Hanson v. Denckla,* 357 U.S. 235, 253, 78 S.Ct. 1228, 2 L.Ed.2d 1283 (1958); *Francosteel Corp. v. M/V Charm,* 19 F.3d 624, 627 (11th Cir.1994) (quoting *Vermeulen v. Renault, U.S.A., Inc.,* 985 F.2d 1534, 1546 (11th Cir.1993)).

In resolving a motion for summary judgment based upon lack of personal jurisdiction, the court is required to accept as true the allegations of plaintiff's complaint, and deny the motion if these allegations state a prima facie case of jurisdiction. *Bracewell v. Nicholson Air Services, Inc.,* 748 F.2d 1499, 1504 (11th Cir.1984). If there is conflict between the plaintiff's and the defendant's allegations or in the evidence, the plaintiff's evidence is to be believed and all reasonable inferences must be drawn in his favor. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 255, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Madara v. Hall,* 916 F.2d 1510, 1514 (11th Cir.1990).

Furthermore, it is important to remember that the conduct at issue is that of the defendants. No plaintiff can establish jurisdiction over a defendant through his own actions. *Hanson,* 357 U.S. at 253, 78 S.Ct. 1228. The unilateral activity of those who claim some relationship with a nonresident defendant cannot satisfy the requirement of contact with the forum state. *Id.* Therefore, we must determine what these defendants did to purposefully avail themselves of the benefits of doing business in Alabama such that the notions of reasonableness and fairness are not offended by requiring them to defend themselves in an Alabama court.

Defendants Luellen and Worldwide Marine are insurance brokers. They were contacted by Smith, the insurance broker in Florida, to locate marine insurance for Ruiz de Molina's boat anchored in Alabama. Ruiz de Molina contends that jurisdiction in Alabama is proper because these defendants "expected to make a commission off selling an insurance policy to an Alabama resident that covered a boat that would be departing an Alabama port once a binder was issued." Ruiz de Molina argues that Worldwide Marine and Luellen foresaw or should have foreseen that they would be called upon to defend themselves in an Alabama court against a claim of fraud arising out of the issuance of the binder.

5

Luellen and Worldwide Marine concede that they were in the business of brokering insurance, that they communicated with Smith and agreed to procure insurance for the boat, and that they knew the boat was owned by an Alabama resident and anchored in Alabama. Nevertheless, because they never had any *direct* contact whatsoever with Ruiz de Molina in Alabama and all of their dealings were with Smith in Florida, they argue that they did not have the necessary "minimum contacts" with Alabama to support its exercise of jurisdiction over them.

We disagree. Although it is true that these defendants had no direct contact whatsoever with Alabama in connection with these events, the following facts are assumed to be true for the purposes of this motion: Luellen and Worldwide Marine chose to do business with an Alabama resident; they expected to receive a benefit from that business; they knew that the insurance they were procuring was for a boat owned by an Alabama resident which was located in Alabama and which would necessarily traverse Alabama waters; they undertook to and did procure insurance for the boat; they authorized Smith to issue a binder for that insurance and to send it to Ruiz de Molina in Alabama; and they received a commission from the insurance premium. If proved at trial, these facts are sufficient to establish that Luellen and Worldwide Marine purposefully availed themselves of the opportunity to do business *with* an Alabama resident *in* Alabama.[3] Since plaintiff's claim arises out of defendants' forum-related activities—the procurement of his insurance policy—jurisdiction over them for this specific claim is appropriate.[4]

Defendants' contention that Ruiz de Molina must come to Michigan to assert his claim against them because they had no *direct* contact with him in Alabama prior to the loss is without merit. Direct contact by

---

[3]For a case finding personal jurisdiction on very similar facts, see *Port Lynch, Inc. v. New England Int'l Surety Inc.,* 1990 A.M.C. (W.D.Wash.1990).

[4]If a person has only "minimal contacts" with the forum, the court may summon him to defend himself in that forum only so long as the cause of action is related to his specific contacts with that forum. *Helicopteros Nacionales de Colombia v. Hall,* 466 U.S. 408, 414 nn. 8, 9, 104 S.Ct. 1868, 80 L.Ed.2d 404 (1984). Of course, a court may summon a nonresident to answer claims unrelated to his contacts with the forum so long as those contacts are substantial, persistent, continuous and systematic. *Id.* Ruiz de Molina makes no argument that these defendants are subject to such general jurisdiction.

6

a nonresident defendant with the forum is not required. The Supreme Court has held that a nonresident defendant may be subject to specific jurisdiction even if his actions giving rise to the suit occurred outside the forum state and he had no direct contact with the plaintiff. *World-Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 298, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980). The Court stated that the "forum State does not exceed its powers under the Due Process Clause if it asserts personal jurisdiction over a corporation that delivers its product into the stream of commerce with the expectation that it will be purchased by consumers in the forum State." *Id.*

The stream of commerce test for jurisdiction is met if the nonresident's product is purchased by or delivered to a consumer in the forum state, so long as the nonresidents's conduct and connection with the forum state are such that he should reasonably anticipate being haled into court there for claims arising out of that conduct. *Id.* In this case, even Luellen and Worldwide do not dispute that they put the insurance policy into the stream of commerce knowing full well that it was to be purchased by and delivered to an Alabama resident for a boat anchored in Alabama which would, of necessity, move in Alabama waters.

Furthermore, Luellen and Worldwide Marine are not charged with mere negligence; they are charged with fraud and fraudulent deceit. *See Ala.Code* §§ 6-5-101, 6-5-103, 6-5-104 (1975). Assuming the allegations of the complaint to be true, Luellen and Worldwide Marine should certainly have anticipated being haled into an Alabama court should a claim arise out of their conduct. *See Shrout v. Thorsen,* 470 So.2d 1222, 1224 (Ala.1985) (defendant charged with fraud knew or should have known what the consequences of his actions would be, and must certainly have expected that a suit would be filed against him in Alabama). The Supreme Court has recognized the significance of the circumstances under which a plaintiff's claim arises:

> [The] petitioners are not charged with mere untargeted negligence. Rather, their intentional, and allegedly tortuous, actions were expressly aimed at [the forum].... And they knew that the brunt of that injury would be felt by respondent in the [forum].... An individual injured in [the forum] need not go to [the nonresident's state] to seek redress from persons who, though remaining in [their state], knowingly cause the injury in [the forum].

7

*Calder v. Jones,* 465 U.S. 783, 788, 104 S.Ct. 1482, 79 L.Ed.2d 804 (1984) (citations omitted).  Under these circumstances, we are satisfied that these defendants have sufficient contacts with Alabama to justify Alabama's exercise of jurisdiction over them.

Furthermore, traditional notions of fair play and substantial justice are not offended by permitting jurisdiction in Alabama.  Once it is decided that defendants have at least minimum contacts with a forum, the burden is on the defendants to show that the imposition of jurisdiction in the forum is unreasonable.  Several factors are relevant to this showing:  (1) the defendant's burden;  (2) the forum state's interest;  (3) the plaintiff's interest in convenient and effective relief;  (4) the judicial system's interest in efficient resolution of controversies;  and (5) the state's shared interest in furthering fundamental social policies.  *Burger King,* 471 U.S. at 477, 105 S.Ct. 2174;  *World-Wide Volkswagen,* 444 U.S. at 292, 100 S.Ct. 559;  *Madara,* 916 F.2d at 1517.

Our review of these factors leads us to conclude that the exercise of jurisdiction over these defendants is not unreasonable.  Alabama has a substantial interest in providing an effective means of recovery for a resident who has been damaged in these circumstances.  *See Shrout,* 470 So.2d at 1225.  Ruiz de Molina also has a very significant interest in obtaining convenient and effective relief.  Indeed, if the allegations of the complaint are true and service of process were not permitted, these defendants would be immunized to a significant extent from the consequences of their actions.  *Id.*  Furthermore, we note that the judicial system has a strong interest in resolving this litigation in one piece, instead of piecemeal—part in Alabama, part in Michigan.  Finally, although defendant objects to the inconvenience of defending in a foreign jurisdiction, a corporation doing business all over the southeast United States may be required to bear that risk.  We conclude that the requirements of "fair play and substantial justice" do not defeat the reasonableness of asserting personal jurisdiction in this case.  *See Madara,* 916 F.2d at 1517 (citing *Burger King,* 471 U.S. at 477-78, 105 S.Ct. 2174).  In fact, because these considerations serve to establish the

8

reasonableness of jurisdiction in this case, a lesser showing of minimum contacts than otherwise would be required is sufficient. *Id.* (citing *Burger King,* 471 U.S. at 477, 105 S.Ct. 2174).

B.      *Mental Anguish Damages*

The jury awarded Ruiz de Molina $90,000 in damages for mental anguish suffered as a result of his loss. After trial, defendants moved to reduce the judgment by this amount. They argued that Alabama law does not permit damages for mental anguish for any of the claims on which the jury found them liable. Ruiz de Molina concedes that neither the negligence nor the innocent misrepresentation claim is capable of supporting an award of damages for mental anguish. *See Pacific Mut. Life Ins. Co. v. Haslip,* 553 So.2d 537, 540 (Ala.1989) (mental anguish damages not available for negligent fraud). He argues, however, that the jury's finding of a breach of contract does allow them to award these damages.

In Alabama, "[i]t is settled that the law in this state does not permit recovery for personal injury, inconvenience, annoyance or mental anguish and suffering in an action for breach of a contract of insurance." *Vincent v. Blue Cross-Blue Shield, Inc.,* 373 So.2d 1054, 1056 (Ala.1979). Alabama does, however, recognize a limited exception to this rule. Under Alabama law, "[d]amages for mental anguish can be recovered ... where the contractual duty or obligation is so coupled with matters of mental concern or solicitude, or with the feelings of the party to whom the duty is owed, that a breach of that duty will necessarily or reasonably result in mental anguish or suffering." *Liberty Homes, Inc. v. Epperson,* 581 So.2d 449, 454 (Ala.1991) (quoting *F. Becker Asphaltum Roofing Co. v. Murphy,* 224 Ala. 655, 141 So. 630, 631 (1932)). Ruiz de Molina contends that his loss fits within this exception and that he is entitled to the mental anguish damages awarded by the jury.

We disagree. The majority of the cases in which a plaintiff has been allowed to recover damages for mental anguish involved actions on "contracts for the repair or construction of a house or dwelling or the delivery of utilities thereto, where the breach affected habitability." *See, e.g., Epperson,* 581 So.2d at 454; *Orkin Exterminating Co. v. Donavan,* 519 So.2d 1330 (Ala.1988); *Lawler Mobile Homes, Inc. v. Tarver,* 492

9

So.2d 297 (Ala.1986); *Alabama Power Co. v. Harmon,* 483 So.2d 386 (Ala.1986). Because a person's home is said to be his "castle" and the "largest single individual investment the average American family will make," these contracts are "so coupled with matters of mental concern or solicitude or with the feelings of the party to whom the duty is owed, that a breach of that duty will necessarily or reasonably result in mental anguish or suffering." *B & M Homes, Inc. v. Hogan,* 376 So.2d 667, 671-72 (Ala.1979). Where such a contractual duty breached, the Alabama Supreme Court has said that "it is just that damages therefor be taken into consideration and awarded." *Id.* at 671.

A smaller number of cases has permitted such recovery in actions involving the burial of loved ones, suits based on a physician's promises to deliver a child, and claims based on the breach of a new car warranty where the owner suffers significant fear, anxiety, and embarrassment. *See Taylor v. Baptist Medical Center, Inc.,* 400 So.2d 369 (Ala.1981); *Volkswagen of America, Inc. v. Dillard,* 579 So.2d 1301 (Ala.1991).

The Alabama Supreme Court has made very clear, however, that all these cases represent an exception to the general rule prohibiting mental anguish damages for breach of contract. These cases deserve special treatment because it is highly foreseeable that egregious breaches of certain contracts—involving one's home or deceased loved one, for example—will result in significant emotional distress. *See Sexton v. St. Clair Federal Sav. Bank,* 653 So.2d 959, 962 (Ala.1995). The contractual duties imposed by these contracts are so sensitive that a breach will necessarily and foreseeably result in mental anguish. *Orkin Exterminating,* 519 So.2d at 1333.

This special treatment does not extend, however, to cases involving contracts to insure pleasure boats. *Wellcraft Marine v. Zarzour,* 577 So.2d 414, 419 (Ala.1990). In *Zarzour,* the Alabama Supreme Court expressly rejected the plaintiff's invitation to extend this narrow exception for especially sensitive contractual duties to a contract for the sale of a boat. *Id.* In declining to do so, the court held that a contract for the sale of a boat is not "so related to matters of mental concern or solicitude as to bring it within the ... exception to the rule." *Id.* (quoting *B & M Homes,* 376 So.2d at 667).

10

Ruiz de Molina attempts to distinguish *Zarzour* on the grounds that it does not apply to this case because it concerned a sales contract rather than a contract of insurance.[5] He contends that "property insurance policies are one of the types of contracts that are 'coupled with matters of mental solicitude'." He finds support for this theory in *Independent Fire Ins. Co. v. Lunsford,* 621 So.2d 977 (Ala.1993), in which the Alabama Supreme court approved an award of mental anguish damages to the Lunsfords when their insurer failed to pay them for damage on their mobile home. The court allowed the award to stand despite the fact that the mobile home was not the Lunsford's primary residence. Ruiz de Molina argues that this case established that Alabama law permits a plaintiff to recover mental anguish damages for the breach of *any* insurance policy.[6]

We disagree. The Alabama Supreme Court in *Lunsford* did no more than to affirm an award of mental anguish damages for breach of an insurance contract on a mobile *home.* The court specifically noted that even though the mobile home was not the primary residence of the Lunsfords, it was, nonetheless, used by their relatives. 621 So.2d at 977.

We do not think that the *Lunsford* court intended their decision to broaden the narrow exception permitting mental anguish damages for breach of especially sensitive duties. On the contrary, the Alabama

---

[5]We are puzzled at this distinction since it is in the context of sales contracts that the Alabama Supreme Court first created the exception permitting mental anguish damages. *See, e.g., Epperson,* 581 So.2d at 454; *Orkin,* 519 So.2d at 1330; *Tarver,* 492 So.2d at 297; *Harmon,* 483 So.2d at 386; *B & M Homes,* 376 So.2d at 671-72.

[6]Ruiz de Molina argues that:

> [i]ndividuals, like the Lunsfords ... and Eladio Ruiz [de Molina], purchase property insurance to provide them with a degree of mental solicitude in the event of a loss. Without undue hassle, the insurance company is to pay the benefits due under the policy. There should be no need to fight the insurer and to cope with the stress accompanying such a fight while endeavoring to deal with the other stress caused by the loss. When buying the policy, the insureds thought that they were purchasing a certain degree of emotional peace, as well as financial security, in the event of a covered loss.... [T]he Supreme Court of Alabama has decided that such insurance contracts come within the exception to the general rule that damages for mental anguish are not recoverable in a breach of contract action.

11

Supreme Court has made clear that it is not eager to "widen the breach in the general rule [prohibiting such damages]." *Volkswagen of America, Inc. v. Dillard,* 579 So.2d 1301, 1304 (Ala.1991). The court has permitted recovery of mental anguish damages only in those cases involving breaches of contracts involving emotionally-freighted duties, such as the contract to insure a home. The insurer of homes assumes "contractual duties ... so coupled with matters of mental solicitude as to the duty that is owed, that a breach of that duty will necessarily or reasonably result in mental anguish." *See Orkin,* 519 So.2d at 1330.

We conclude, therefore, that *Lunsford* did not overrule *Zarzour.* Nor did it abrogate the general rule against recovery for mental anguish associated with the breach of a contract. Absent clearer evidence to the contrary than we find in *Lunsford,* we believe that Alabama law does not presume that the parties to a contract meant to "insure each other's emotional tranquility." *See* Douglas J. Whaley, *Paying for the Agony: The Recovery of Emotional Distress Damages in Contract Actions,* 26 Suffolk U.L.Rev. 935, 951 (1992). The breach of any contract which the parties consider important will always lead to some emotional distress. *Id.* The rule in Alabama remains, however, that recovery of mental anguish damages is permitted for breach of contract only in a narrow range of cases involving contracts which create especially sensitive duties, the breach of which cause highly foreseeable and significant mental anguish. As there is no allegation that this boat was Ruiz de Molina's home, the reduction of the verdict awarding mental anguish damages for breach of the insurance contract on Ruiz de Molina's boat is due to be affirmed.

III.

We hold, therefore, that Luellen and Worldwide Marine purposefully availed themselves of the benefits of selling an insurance contract to an Alabama resident thereby subjecting themselves to the specific jurisdiction of the Alabama courts over the cause of action which arose out of doing that business. We also hold that Alabama does not permit Ruiz de Molina to recover mental anguish damages for the breach of that contract of insurance.

12

Accordingly, the grant of summary judgment to Luellen and Worldwide Marine is REVERSED and the case is remanded to the district court for further proceedings. The district court's reduction of the judgment against Smith and Merritt and Furman is AFFIRMED.