**Charles E. BENEDICT, et al., Plaintiffs,**

v.

**GENERAL MOTORS CORPORATION and Delphi Automotive Systems L.L.C., Defendants.**

**No. 4:00cv483–RH.**

United States District Court, N.D. Florida, Tallahassee Division.

May 23, 2001.

William Howard Davis, Wadsworth & Davis, Tallahassee, FL, Robert Greenspoon, Joseph Hosteny, Raymond P. Niro, Paul C. Gibbons, Niro Scavone Haller, Chicago, IL, for plaintiffs.

F. Townsend Hawkes, Carlton Fields Ward, Tallahassee, FL, Ralph Benjamine Reid, Carlton Fields PA, Miami, FL, Ernie L. Brooks, Thomas A. Lewry, John E. Nemazi, Thomas W. Cunningham, Frank A. Angileri, Brooks & Kushman, Southfield, MI, for defendant General Motors Corp.

F. Townsend Hawkes, Carlton Fields Ward, Tallahassee, FL, Charles Everett Boyd, Thomas M. Ervin, Ervin Varn Jacobs, Tallahassee, FL, Ralph Benjamine Reid, Carlton Fields PA, Miami, FL, Charles W. Shifley, Binal J. Patel, Matthew P. Becker, Banner & Witcoff Ltd., Chicago, IL, for defendant Delphi Automotive systems.

### ORDER DENYING MOTION TO DISMISS

HINKLE, District Judge.

This is a patent infringement action. Defendant Delphi Automotive Systems L.L.C., the supplier of the allegedly infringing part, has moved to dismiss for lack of personal jurisdiction. I deny the motion.

## Facts

Plaintiff Charles E. Benedict invented and obtained a patent on a system that automatically turns automobile lights on and off as appropriate based on conditions such as darkness or rain. Dr. Benedict is a citizen of Florida.

Defendant Delphi Automotive Systems L.L.C. is, by its own account, a "world leading supplier" of vehicle parts, including automated light systems, with net sales in the year 2000 of $29.1 billion.[1] Delphi claims an "expansive global presence, with a network of manufacturing sites, technical centers, sales offices and joint ventures located in every major region of the world."[2] Although previously operated as part of co-defendant General Motors Corporation, Delphi was separately incorporated in 1998. More than 70% of Delphi's sales are to General Motors.

Delphi is a Delaware corporation with its principal place of business in Michigan. Delphi asserts, and for purposes of this order I assume, that Delphi neither manufactures nor acquires in Florida any of the products it sells, and that Delphi makes no sales, to General Motors or anyone else, in Florida. Delphi products are, however, routinely incorporated into General Motors vehicles. General Motors vehicles of course are sold in Florida.

Delphi has a single small office in Florida with one employee. Delphi says the employee services only Mexican, Cental American and Carribean accounts from that office. Delphi says the employee spends 25% of his time in the office doing paper work relating to his foreign sales and the rest of his time out of the state. None of the employee's duties are related to the automated light system at issue.

Delphi has participated in a trade show in Florida and has tested products—but not automated light systems-in Florida.

Delphi has obtained from the Florida Secretary of State a certificate of authority to do business in Florida. As required by Florida law as a condition of obtaining such a certificate, Delphi has designated a registered agent in the state for service of process. The summons and complaint in this action were served on Delphi's registered agent in Florida.

## Discussion

The issue is whether Florida law provides for personal jurisdiction over Delphi under these circumstances.[3] For three separate and independent reasons, each of which would be sufficient standing alone, the answer is yes. First, Delphi has appointed a registered agent for service of process, who was in fact served; under Florida law as definitively interpreted by the Florida Supreme Court, nothing more is required. Second, under Eleventh Circuit authority binding in this court, Florida's long-arm statute provides jurisdiction over a defendant who commits a tortious act in another state that causes injury in Florida, as allegedly occurred here. Third, Florida's long-arm statute provides jurisdiction over a defendant who engages in substantial and not isolated activity in the state, even in actions unrelated to that activity; Delphi maintains an office and permanent employee in Florida (and has

1. Delphi Automotive Systems Corporation Form 10–K for fiscal year ended Dec. 31, 2000 (document 40, attachment I, p. 3 of 78).

2. *Id.*

3. Although plaintiffs' claims arise under federal law, the issue of personal jurisdiction is determined under the law of the state where the district court sits, *see, e.g., Cable/Home Comm. Corp. v. Network Productions, Inc.*, 902 F.2d 829, 855–56 (11th Cir.1990), subject only to constitutional limitations.

engaged in other activities in the state) and thus comes within this provision.

Even when state law provides jurisdiction, there are limits imposed by the Due Process Clause. Delphi makes no claim, however, that the exercise of jurisdiction here would be unconstitutional, and it clearly would not.

This order addresses in turn the three bases for the exercise of jurisdiction under Florida law and then addresses the Due Process Clause.

## I. REGISTERED AGENT

■ Historically, the most basic method by which an American court obtained personal jurisdiction over a party was through personal service of process within the forum state. *See, e.g., Pennoyer v. Neff,* 95 U.S. 714, 733, 24 L.Ed. 565 (1877). For a corporation, service in this traditional manner was made on a corporate officer or agent. As a convenience, most states also came to require a corporation to designate a "registered agent" on whom service could be made. The requirement to name a "registered agent" within the state also was imposed on out-of-state corporations doing business in the state. This was part of the traditional approach of obtaining jurisdiction through service of process within the geographic boundaries of the state at issue.

In time, "long-arm" statutes were enacted under which service could also be made outside the state's boundaries, but only if various criteria were met.

Florida law recognizes both the traditional method of service within the state, *see* Fla.Stat. § 48.011, and the newer "long-arm" approach under which service may be made outside the state, *see* Fla. Stat. § 48.193.[4] For a corporation, service

within the state may be made on specified officers or the registered agent. *See* Fla. Stat. § 48.081. Any corporation that is incorporated in or registers to do business in Florida must designate a registered agent for service of process. *See* Fla.Stat. § 48.091.

Delphi engages in at least some activities in Florida; it has an office and employee in Florida, has attended a trade show, and has tested products in the state. Delphi obtained a certificate of authority to do business in the state and, as required, designated a registered agent. Service of the case at bar was made on the registered agent in Florida. This was traditional, within-the-jurisdiction personal service.

The entire premise of Delphi's motion to dismiss, however, is that service of process on an out-of-state corporation's registered agent under § 48.081 is not alone sufficient to provide jurisdiction, but that, instead, personal jurisdiction over an out-of-state corporation exists only if the criteria of Florida's long-arm statute, § 48.193, are met. That is incorrect. These are separate statutes that provide separate methods of obtaining personal jurisdiction.

As an original matter, a state could adopt either of two intelligible approaches: first, that jurisdiction over non-resident defendants will exist whenever they are served within the state (including, in the case of corporations, when their registered agents are served), or second, that jurisdiction over non-resident defendants will exist only if the criteria of the long-arm statute are met. But whatever a state *could* do as an original manner, it is clear that what Florida *has* done, as definitively established by the Florida Supreme Court, is to adopt the first approach: when ser-

---

4. Unless otherwise indicated, all references to the Florida Statutes in this order are to the

officially compiled Florida Statutes issued in 2000, as in effect when Delphi was served.

vice is made on a corporation's registered agent, Florida law requires nothing more, and the long-arm statute is irrelevant.[5]

The dispositive case is *White v. Pepsico, Inc.*, 568 So.2d 886 (Fla.1990). There, a person who was injured by the explosion of a soft drink bottle in Jamaica sued Pepsico, the manufacturer of the soft drink, in the United States District Court for the Southern District of Florida. Pepsico moved to dismiss for lack of personal jurisdiction, correctly noting that none of the criteria for service under the long-arm statute (as it existed at the time of the tort at issue) were met; the tort was committed in Jamaica, caused injury in Jamaica, and had no connection with the State of Florida. The District Court agreed and dismissed the action, even though Pepsico had been served in Florida through its registered agent. The plaintiff appealed. The United States Court of Appeals for the Eleventh Circuit certified the matter to the Florida Supreme Court.

The Florida Supreme Court held that service on the registered agent was sufficient, without more, to establish personal jurisdiction, and that it was not necessary for the plaintiff to establish either any connection between the cause of action and the State of Florida or to meet the various criteria of the long-arm statute. The court said:

> By formally qualifying to do business in Florida and registering an agent pursuant to section 48.091(1) and chapter 607 of the Florida Statutes (1983), [the] foreign corporation submitted itself to the jurisdiction of Florida courts because it acknowledged that it did sufficient busi-

ness in Florida to make it amenable to suit and service of process here.

*White v. Pepsico, Inc.*, 568 So.2d 886, 889 (Fla.1990).

The court also noted that, under a 1984 amendment to the long-arm statute, its preexisting provisions established jurisdiction only over actions arising from—that is, having "connexity" with—the activities triggering long-arm jurisdiction. The court held, however, that this "connexity" requirement applied only to the long-arm statute, *not* when service was made on a corporation's registered agent. The court quoted with approval a legislative staff analysis describing the 1984 amendment's effect as follows:

> *This connexity requirement is not imposed where the foreign corporation has registered under the Corporation Code and has designated a registered agent for receipt of service of process.*

*White v. Pepsico, Inc.*, 568 So.2d 886, 890 (Fla.1990), *quoting* Staff of Fla. S. Comm. on Judiciary–Civ., SB 352 (1983) Staff Analysis 2 (April 27, 1983) (on file with Florida State Archives, series 18, carton 1471) (emphasis by Florida Supreme Court).

In short, the court held that under Florida law, service on Pepsico's registered agent was sufficient, standing alone, to confer personal jurisdiction, even over actions unrelated to Pepsico's Florida activities. The Eleventh Circuit accepted that decision and reversed the order dismissing the complaint. *White v. Pepsico, Inc.*, 923 F.2d 1473 (11th Cir.1991).

That result is dispositive here. Delphi, like Pepsico, formally qualified to do business in Florida and designated a regis-

---

5. When the requirements of Florida law for the exercise of personal jurisdiction are met in this (or any other) manner, constitutional boundaries of course still must be observed. That is not an issue here, because Delphi does not challenge the constitutionality of exercising jurisdiction, and any such challenge on these facts would be unfounded. *See* section IV *infra*.

tered agent. By doing so, Delphi, like Pepsico, "submitted itself to the jurisdiction of Florida courts," even with respect to actions not covered by Florida's long-arm statute and unconnected with the corporation's business in the state. Delphi's motion to dismiss, like Pepsico's, is unfounded.[6]

## II. LONG–ARM JURISDICTION: TORTIOUS ACT

■ Even if service on a corporation's registered agent were not sufficient to establish personal jurisdiction under Florida law, Delphi's motion to dismiss would remain unfounded. One of the events subjecting a party to jurisdiction under Florida's long-arm statute is "[c]ommitting a tortious act within this state." Fla.Stat. § 48.193(1)(b). Patent infringement is a "tortious act" within the meaning of this provision.[7]

It is unclear, from the face of the statute, whether the statute applies only when the defendant takes action in Florida, or whether it also applies when the defendant takes action outside Florida that causes injury in Florida. The Florida Supreme Court has not resolved this issue, and Florida's District Courts of Appeal are divided.

In *Posner v. Essex Ins. Co.*, 178 F.3d 1209, 1216–17 (11th Cir.1999), the court cited earlier Eleventh Circuit decisions that interpreted § 48.193(1)(b) to apply when the defendant takes action outside Florida that causes injury in Florida, acknowledged the deep division among Florida's District Courts of Appeal, and continued:

> Absent a contrary decision by [the Florida Supreme] Court, however, we are bound in this case to follow this court's firmly established precedent, which interprets subsection (1)(b) to apply to defendants committing tortious acts outside the state that cause injury in Florida.

*Posner v. Essex Ins. Co.*, 178 F.3d 1209, 1217 (11th Cir.1999) (collecting authorities).[8]

---

**6.** In asserting the contrary, Delphi cites *Consolidated Development Corp. v. Sherritt, Inc.*, 216 F.3d 1286 (11th Cir.2000), which held there was no jurisdiction under the federal long-arm provision, Federal Rule of Civil Procedure 4(k)(2), over a Canadian corporation with very limited contacts in the United States; the exercise of jurisdiction would have violated the Due Process Clause. The court held that the corporation's appointment of a registered agent specifically in connection with a single, isolated bond issuance was insufficient to establish jurisdiction with respect to other matters. The corporation had not appointed a registered agent for service of process generally, as Delphi has done, and the corporation's registered agent was not in fact served, as Delphi's was. Moreover, the issue in the case at bar is whether, under *Florida* law, service on a registered agent establishes jurisdiction; *Consolidated Development* dealt with *Florida* law not at all. *Consolidated Development* did address constitutional standards, but Delphi makes no constitutional claim, and in any event any such claim would

be unfounded, as set forth below in section IV of this order.

**7.** See *North American Philips Corp. v. American Vending Sales, Inc.*, 35 F.3d 1576, 1578 (Fed.Cir.1994); *Restorative Products, Inc. v. Mmar Medical Group, Inc.*, 1995 WL 708655, 1995 U.S. Dist. Lexis 17876 (M.D.Fla.1995).

**8.** The earlier circuit cases cited in *Posner* included *Robinson v. Giarmarco & Bill, P.C.*, 74 F.3d 253, 257 (11th Cir.1996); *Sun Bank, N.A. v. E.F. Hutton & Co.*, 926 F.2d 1030, 1033–34 (11th Cir.1991); *Bangor Punta Operations, Inc. v. Universal Marine Co.*, 543 F.2d 1107, 1109 (5th Cir.1976); and *Rebozo v. Washington Post Co.*, 515 F.2d 1208, 1212–13 (5th Cir.1975). Although there are variations in the facts and causes of action at issue in these various cases, any effort to limit the reach of the circuit's approach on that basis would run afoul of the court's unequivocal language—including that quoted above—setting forth a broad interpretation of subsection

The Florida Supreme Court still has entered no contrary ruling. *Posner* and the Eleventh Circuit decisions on which it relied thus remain binding in this court. Here, as in *Posner*, the defendant has been sued for alleged misconduct outside Florida allegedly causing injury in Florida; here, as there, § 48.193(1)(b) establishes personal jurisdiction.[9]

## III. LONG–ARM JURISDICTION: SUBSTANTIAL AND NOT ISOLATED ACTIVITY IN THE STATE

■ Even if service on a corporation's registered agent were not sufficient to establish personal jurisdiction, and even if § 48.193(1)(b) did not apply to acts committed outside the state that cause injury in the state, Delphi's motion to dismiss would remain unfounded. Another of the criteria subjecting a party to jurisdiction under Florida's long arm statute is engaging "in substantial and not isolated activity within this state." Fla.Stat. § 48.193(2). This provision applies to all actions against the party, whether or not arising from the party's "activity within the state," that is, without regard to "connexity."

Delphi maintains an office in Florida with a full-time employee. This would be sufficient to constitute "substantial and not isolated activity within the state," even without regard to the facts that Delphi has obtained a certificate of authority to do business in the state, has attended a trade show and tested products in the state, and continuously supplies parts to one or more manufacturers knowing that the parts will be incorporated into finished products that will be sold in the state in high volume on a daily basis.

Moreover, Delphi is, by its own account, a "world leading supplier" of vehicle parts with year 2000 net sales of $29.1 billion.[10] Delphi claims an "expansive global presence, with a network of manufacturing sites, technical centers, sales offices and joint ventures located in every major region of the world."[11] A corporation of that scope, whose "expansive global presence" includes an office in Florida, is precisely the kind of business over which § 48.193(2) creates jurisdiction.[12]

---

(1)(b) not moored to any particular cause of action or set of facts.

**9.** There is considerable force to the argument that the Eleventh Circuit's reading of § 48.193(1)(b) is inconsistent with the Legislature's adoption of § 48.193(1)(f). Subsection (1)(f) affords long-arm jurisdiction for "[c]ausing injury to persons or property within this state arising out of an act or omission by the defendant outside this state," if certain additional conditions are met. Subsection (1)(f) does not apply in the case at bar because "injury to persons or property" means bodily injury or tangible property damage; economic injury of the type at issue here does not qualify. *See, e.g., Aetna Life & Casualty Co. v. Therm–O–Disc, Inc.,* 511 So.2d 992, 994 (Fla.1987). If, however, subsection (1)(b) applies whenever a tortious act causes injury in the state, then subsection (1)(f) apparently is superfluous, and the limitations on its appli-

cability apparently are meaningless. Nonetheless, just as the *Posner* panel was bound to follow circuit precedent, so am I. (And in any event, as set forth in sections I and III of this order, the result would be the same even if § 48.193(1)(b) were held inapplicable.)

**10.** Delphi Automotive Systems Corporation Form 10–K for fiscal year ended Dec. 31, 2000 (document 40, attachment I, p. 3 of 78).

**11.** *Id.*

**12.** Delphi asserts that sales of parts outside Florida that are incorporated by General Motors into vehicles ultimately sold in Florida are irrelevant to the § 48.193(2) analysis. Whether those sales properly figure into the § 48.193(2) analysis need not be addressed, because, on the facts of this case, the result would be the same either way.

In challenging § 48.193(2) jurisdiction, Delphi argues that its Florida employee spends most of his time outside the state, works only on foreign sales, does only "paper work" in his Florida office, and has the office only as a "convenience" and not for reasons related to Florida sales. Activity undertaken in the state for "convenience," however, counts in the jurisdictional analysis, just like activity undertaken for any other purpose. Delphi suggests no reason why it should not.

Delphi also asserts that its Florida activities-the office, employee, trade show and product testing-constitute a tiny percentage of its overall business. The proper approach to § 48.193(2), however, addresses volume of activity, not solely (or even primarily) percentage. Assuming that percentage of business in Florida is relevant at all, it clearly is not (and should not be) controlling.

The reason may be illustrated by considering not just major corporations with international activities, such as Delphi, but the many smaller corporations to which the long-arm statute also is meant to apply. A very small corporation based in Michigan with an office and employee in Florida serving exactly the same function as Delphi's clearly would be subject to jurisdiction in Florida; the corporation would have an office and employee in Florida on a substantial and not isolated basis, constituting a significant portion of the firm's overall operation. That Delphi is a world-wide corporation with many offices and employees hardly makes it less appropriate to subject Delphi to jurisdiction here; if anything, it might be thought more appropriate, not less, to subject a world-wide corporation with an office and employee in Florida to the jurisdiction of Florida's courts. In any event, in enacting § 48.193(2), the Florida Legislature required only "substantial and not isolated activity within the state"; the Legislature imposed no requirement that the corporation do any minimum percentage of its overall business here.

Delphi has chosen, for reasons of its own, to maintain an office in Florida and place an employee here. The office is small, and the employee is gone 75% of the time. But the office and employee were not here only for only a short time or for a specific project or on an "isolated" basis; they are here permanently. Delphi presumably incurs some expense—almost surely in the tens of thousands of dollars annually—for the office and employee; they must serve some purpose, presumably one that is not insubstantial.

In short, Delphi is engaged, on a continuing basis, in substantial and not isolated activity in this state, thus subjecting it to jurisdiction under § 48.193(2).

## IV. DUE PROCESS

■ Finally, even when Florida law provides jurisdiction on any or all of the grounds set forth above, that does not end the matter; the Due Process Clause still imposes limits on the exercise of personal jurisdiction. Delphi apparently does not assert, however, that exercising jurisdiction in this case would be unconstitutional, and in any event any such claim would be unfounded.

Delphi allegedly is infringing on a continuing basis a patent held by a citizen of the forum state. In addition, Delphi has obtained a certificate of authority to do business in the state, has appointed a registered agent for service of process in the state, maintains on a continuing basis an office in the state with a full-time employee, has attended a trade show in the state, has tested products in the state, and continuously manufactures and sells parts (including but not limited to allegedly infringing parts) to one or more manufacturers,

knowing that the parts will be incorporated into finished products that will be sold in the state in high volume on a daily basis. Taken together, these activities easily constitute sufficient contacts to make the exercise of jurisdiction over Delphi constitutional. *See generally Asahi Metal Industry Co. v. Superior Court,* 480 U.S. 102, 107 S.Ct. 1026, 94 L.Ed.2d 92 (1987) (addressing without majority opinion due process limitations on jurisdiction over parts manufacturer); *World–Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980); *International Shoe Co. v. Washington,* 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945); *Ruiz de Molina v. Merritt & Furman Ins. Agency,* 207 F.3d 1351 (11th Cir.2000); *Vermeulen v. Renault, U.S.A., Inc.,* 985 F.2d 1534 (11th Cir.1993).

Subjecting Delphi to personal jurisdiction under these circumstances is neither surprising nor unfair. Delphi's Florida office is protected by Florida fire and police departments and is lighted by Florida public utilities. Delphi's Florida employee is covered by the Florida unemployment and worker's compensation systems. The employee, like any other Florida resident, has access to the Florida public schools and public hospitals. In short, Delphi accepts for itself and its employee various Florida public services and the protections of Florida law. When Delphi allegedly infringes the patent of a Florida citizen, by supplying a part incorporated into vehicles sold throughout the world including in Florida, it is not too much to ask Delphi to defend its position in Florida. Delphi's motion to dismiss for lack of personal jurisdiction is unfounded.[13]

### Conclusion

For these reasons,

IT IS ORDERED:

The motion to dismiss of defendant Delphi Automotive Systems L.L.C. (document 21) is DENIED.

---

13. Delphi also asserts venue is improper. In a patent infringement case, however, venue is proper where personal jurisdiction exists. *See* 28 U.S.C. § 1400(b) (establishing venue in patent infringement action in, *inter alia,* district where defendant "resides"); 28 U.S.C. § 1391(c) (establishing that corporate defendant "resides" for venue purposes "in any judicial district in which it is subject to personal jurisdiction"); *VE Holding Corp. v. Johnson Gas Appliance Co.,* 917 F.2d 1574, 1583 (Fed.Cir.1990) (holding that under § 1400(b) and § 1391(c), venue in patent infringement action against corporate defendant exists wherever there is personal jurisdiction). Delphi does not dispute this. The personal jurisdiction ruling thus also is fatal to Delphi's venue argument.